ORIGINAL

Priority
Send ✓
Enter ✓
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

MAY 13 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

ENTERED
CLERK, U S DISTRICT COURT

MAY 16 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Comite de Jornaleros de Glendale, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>City of Glendale, )<br><br>Defendant. ) | NO. CV 04-3521 SJO (Ex)<br><br><br>**ORDER RE RESPONSE TO ORDER TO SHOW CAUSE** |

The matter came before this Court on Plaintiffs Comite de Jornaleros de Glendale ("Comite de Jornaleros") or Committee of Day Laborers of Glendale and the National Day Laborer Organizing Network's ("NDLON") (collectively, "Plaintiffs") and Defendant City of Glendale's ("Defendant" or "the City") response to the Court's Order to Show Cause ("OSC"): (1) why the trial of the action on the merits should not be consolidated with the consideration of the application for preliminary injunction pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure; and (2) why a permanent injunction and entry of final judgment should not issue. Having duly considered the issues, the Court PERMANENTLY ENJOINS Defendant City of Glendale, as well as its officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them from enforcing § 9.17.030 of the Glendale Municipal Code (hereinafter, "the Anti-Solicitation Ordinance" or "the Ordinance") or from undertaking other acts to discourage

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

39

1 | the speech § 9.17.030 unlawfully prohibits.  Glendale Municipal Code § 9.17.030 (2004) (as

2 | amended).  Further, the Court ENTERS FINAL JUDGMENT in favor of Plaintiffs.

3 | I.     BACKGROUND

4 |        A.     Procedural Background

5 |        Plaintiffs brought a Motion for Preliminary Injunction to enjoin Defendant from enforcing §

6 | 9.17.030.   Having considered the arguments presented, the Court took the matter under

7 | submission.  Thereafter, a decision granting a preliminary injunction was issued.

8 |        Rule 65(a)(2) provides that "before or *after* the commencement of the hearing of an

9 | application for a preliminary injunction, the court may order the trial of the action on the merits to

10 | be advanced and consolidated with the hearing of the application." Fed. R. Civ. P. 65(a)(2); *see*

11 | *also, Michenfelder v. Sumner,* 860 F.2d 328, 337 (9th Cir. 1988).  Pursuant to Rule 65, the Court

12 | ordered the parties to show cause:  (1) why the trial of the action on the merits should not be

13 | consolidated with the consideration of the application for preliminary injunction; and (2) why a

14 | permanent injunction and entry of final judgment should not issue.  The hearing for the parties'

15 | Cross-Motions for Summary Judgment set for March 14, 2005 was vacated pending the Court's

16 | ruling on the OSC.

17 |        In response to the OSC, Defendant argues that it did not have the opportunity to fully brief

18 | and to present all evidence relevant to Plaintiffs' facial challenge to the Ordinance.  Thus,

19 | Defendant posits that consolidating the trial on the merits with the consideration of the application

20 | for preliminary injunction and entering a permanent injunction would substantially prejudice

21 | Defendant and would not be consistent with Rule 65.

22 |        In contrast, Plaintiffs expressed no objection to:  (1) the consolidation of the trial on the

23 | merits with the consideration of the application for preliminary injunction; (2) the issuance of a

24 | permanent injunction; and (3) the entry of final judgment.  Plaintiffs also do not object to the

25 | Court's consideration of the parties' pending  Cross-Motions, with the caveat that vacating the

26 | March 14, 2005 hearing date for the Cross-Motions effectively changes the due date for their

27 | Reply.  Accordingly, Plaintiffs have not filed a Reply and request the opportunity to do so before

28 | the consideration of the Cross-Motions.  Plaintiffs submit that the only purpose for the Court to

1  consider the Cross-Motions briefing is to have the benefit of further legal argument on the issues

2  relevant to this action.

3       Having carefully considered the parties' response to the OSC and the Cross-Motions

4  briefing, the Court consolidates the trial of the action on the merits with the consideration of the

5  application for preliminary injunction.  This notwithstanding, the Court addresses the additional

6  arguments presented by Defendant in its briefs in support of its Motion for Summary Judgment

7  and in opposition to Plaintiff's Motion for Summary Judgment.  The Court holds that, as a matter

8  of law, § 9.17.030 is vague on its face and does not provide for ample channels for

9  communicating solicitation and thus, violates the First and Fourteenth Amendments of the United

10  States Constitution.

11       B.    Factual Background

12       Plaintiffs commenced this action on May 20, 2004, challenging the constitutionality of §

13  9.17.030 of the Glendale Municipal Code.

14       On June 29, 2004, the City adopted an amended § 9.17.030. Subdivision (A) of the section

15  provides that:

> No person shall stand in or on any street, roadway, curb, parkway, alley, highway,
> and driveway, and solicit or attempt to solicit, employment, business or contributions
> of money or other property from the occupant of any vehicle while that vehicle is
> located on any public street roadway, alley, highway or driveway and not lawfully
> parked within, or immediately adjacent to, any Industrial or Commercial Zone within
> the City.

20  Glendale Municipal Code § 9.17.030(A) (2004). Subdivision B of § 9.17.030, as amended, mirrors

21  subdivision A and provides that:

> No person, while the occupant of any vehicle located on any public street, roadway,
> alley, highway or driveway and not lawfully parked, shall solicit, or attempt to solicit
> employment, business or contributions of money or other property from a person
> who is on or within any street, roadway, curb, parkway, alley or driveway within, or
> immediately adjacent to, any Industrial or Commercial Zone within the City.

25  Glendale Municipal Code § 9.17.030(B) (2004).

26

27

28

3

1   Plaintiffs allege that § 9.17.020, as amended, defines prohibited solicitation in a manner

2   intended to reach day laborers alone by, for example, excluding from the proscription any person

3   "using signs." FAC ¶ 9.[1]

4   Plaintiffs aver that § 9.17.030, as amended, discriminates among speech and other

5   expressive activity on the basis of content, prohibiting and prescribing criminal penalties for

6   speech of particular content while speech of different content, even if expressed in the same time,

7   place, and manner, is not proscribed or regulated. FAC ¶ 14. Plaintiffs also claim that § 9.17.030

8   regulates lawful, non-misleading commercial speech and lacks a compelling or substantial

9   legitimate governmental interest in regulating speech and expression. *Id.* ¶¶ 15-16. Further,

10  Plaintiffs claim that the provision is unduly vague and not sufficiently tailored to serve any

11  appropriate governmental interest. *Id.* ¶¶ 17-18.

12  On August 10, 2004, the City commenced enforcement of the amended Anti-Solicitation

13  Ordinance.

14  II.   DISCUSSION

15  The parties disagree as to the appropriate test to be applied in making the determination

16  as to whether the Ordinance is constitutional. The arguments advanced by the parties pertaining

17  to the appropriate test were a mere rehash of the arguments already raised in Plaintiffs' Motion

18  for Preliminary Injunction. Having considered the record, the Court concludes that the City has

19  shown that its principal purpose in passing the Ordinance was to alleviate significant secondary

20  effects. Accordingly, the Court concludes that the Ordinance is a content-neutral regulation, and

21  should be evaluated as such.

22  In assessing the constitutionality of an ordinance that limits the time, place or manner of

23  speech in a public forum, a court must determine whether the statute is content-neutral or content-

24  based. *See Tollis, Inc. v. San Bernadino County*, 827 F.2d 1329, 1332 (9th Cir. 1987). If it is

25

26  _____

27  [1] The Ordinance, as amended, defines "solicit" and "solicitation" as "[t]he act of making a request, offer or announcement by use of the spoken word, bodily act or gesture." Glendale Municipal Code § 9.17.020(1) (2004). The act "shall be deemed completed when made, whether or not an employment relationship is created." Glendale Municipal Code § 9.17.020(2) (2004).

28

4

content-based, the court applies strict scrutiny to determine whether the statute is tailored to "serve a compelling state interest and is narrowly drawn to achieve that end." *Simon & Schuster, Inc. v. New York Crime Victims Bd.*, 502 U.S. 105, 118 (1991) (quotation omitted). However, if the statute is content-neutral, the government may enforce it provided the ordinance: (1) is narrowly tailored to serve a significant governmental interest; and (2) leaves open ample alternative channels for communicating the information. *Acorn v. Phoenix,* 798 F.2d 1260, 1267 (9th Cir. 1986).

A.    The Ordinance Is Vague and Not Narrowly Tailored to Serve a Significant Governmental Interest.

1.    The City's Interests

As the Court has observed in greater detail in its Order Re: Preliminary Injunction, the City's asserted interests are significant enough to justify an appropriately tailored ordinance.  Order at 19.[2]  The City contends that it has significant interest in reducing traffic congestion, assuring the safety of drivers and pedestrians, and preserving and improving (where possible) the quality of life of its residents and business owners.  Def.'s Mot. for Summ. J. at 13.  Having surveyed the authorities relied upon by Defendant, the Court finds that the City has presented evidence of its significant interest in enacting the Ordinance.  *See, e.g., Heffron v. Int'l Soc. for Krishna Consciousness,* 452 U.S. 640, 650 (1981) (a government's interest in protecting the "safety and convenience" of persons using a public forum is a valid governmental objective); *Acorn,* 798 F.2d at 1268 ("The orderly flow of motorized traffic is a major concern in congested urban areas,

---

[2] In amending the Anti-Solicitation Ordinance, the council of the City added § 9.17.015, which *inter alia,* expressed that

the approaching and solicitation by pedestrians directed to the occupants of vehicles which are located in the public right-of-ways and roadways has caused a significant public safety risk by causing vehicles to stop, impede and block the flow of traffic in travel lanes within or adjacent to Industrial or Commercial zones and it will be in the interest of the public health, safety and welfare to restrict the solicitation acts that occur in, within, or directly affect traffic conditions upon any public street, roadway or alley within the City.

Glendale Municipal Code § 9.17.015 (2004).

1   particularly because an obstruction or delay in traffic at one point along a traffic artery results in

2   delays and backups far back down the roadway."). The issue, however, is whether the Ordinance

3   is narrowly tailored to serve the City's governmental interest and leaves open ample alternative

4   channels for communication of the information. The Court responds in the negative.

5              2.    Narrow Tailoring

6        The test for narrow tailoring places a burden on the City of Glendale to show that a

7   "reasonable fit" exists between its legitimate interests and the terms of its Ordinance. *S.O.C., Inc.*

8   *v. County of Clark,* 152 F.3d 1136, 1148 (9th Cir. 1998). This does not mean that the Ordinance

9   must "be the least restrictive or the least intrusive means" of furthering the City's interests.

10  *Colacurcio v. City of Kent,* 163 F.3d 545, 553 (9th Cir. 1998). The requirement of narrow tailoring

11  is satisfied so long as the Ordinance promotes a substantial government interest that would be

12  achieved less effectively absent the regulation, *id.*, and does not "burden substantially more

13  speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against*

14  *Racism*, 491 U.S. 781, 799 (1989). In other words, the City must show that in enacting the

15  particular limitations, "it relied upon evidence permitting the reasonable inference that, absent

16  such limitations," the proscribed speech would have harmful secondary effects. *Tollis,* 827 F.2d

17  at 1333.

18       In the Order Re: Preliminary Injunction, the Court concluded that the Ordinance is vague

19  and not sufficiently tailored to achieve the City's interest in improving the quality of life of the

20  laborers, residents, and business owners. Order at 23. In a nutshell, the Court opined that there

21  is no "significant distinction between solicitation taking place on a sidewalk which Defendant

22  asserts would be permissible under the Ordinance, and the curb or 'edges' of a *sidewalk*." *Id.* at

23  22. Moreover, the term "curb," which is not defined or delineated in the Ordinance, is too vague

24  for the purpose of enforcing the statute. *Id.*[3] The Court also observed that although the

25

26       [3] The City now clarifies that the American Public Works Association sets the standards for
     construction of curbs. That standard mandates that curbs measure six inches wide, and all curbs
27   in the City of Glendale measure six inches wide. LeBlanc Decl. ¶ 4. This standard
     notwithstanding, ordinary citizens may not know that, *technically*, a curb is that raised, six-inch
28   concrete edging built along the street to form part of a gutter.

1    Ordinance does not list "sidewalk" as a place where solicitation is prohibited, § 9.17.030 does list

2    "street" and "curb" as prohibited places. Both of these terms, the Court explained, may

3    reasonably be interpreted to include sidewalks. *Id.* at 18, n.6.[4] The Court also opined that it is

4    unclear where the curb ends and where the sidewalk begins. The Court concludes that the

5    vagueness of the Ordinance is likely to chill permissible speech inasmuch as the boundaries of

6    permissible solicitation are unclear.[5]

7

8    ─────────────────

9       [4] Defendant now contends that the term "street" cannot reasonably be interpreted to include "sidewalk." This argument is disingenuous. In fact, the City *itself* broadly defines the term "street"

10    elsewhere in the Glendale Municipal Code as including "sidewalks."   *See* Glendale Municipal Code § 12.36.020, *infra.*

11       Defendant also cites to *Acorn v. Phoenix* to bolster its argument that the term "street" cannot reasonably be interpreted to include "sidewalk." 798 F.2d at 1266. In *Acorn,* the Ninth

12    Circuit observed that:

13

14         In decisions where the Court has designated "streets" as traditional public fora, there is no reason to believe the Court was using the word in any way other than its

15         commonly accepted meaning. Indeed, the Court has listed "sidewalks" separately as an additional example of traditional public fora, rather than as wrapped up in a broad definition of the word "streets."

16

17    *Id.* In other words, Defendant suggests that under *Acorn,* the term "sidewalk" does not fall within the broad meaning of the term "street." Nonetheless, Merriam-Webster's Collegiate Dictionary

18    (10th ed.) defines "street" as "a thorough-fare esp. in a city, town, or village that is wider than an alley or lane and that *usu. includes sidewalks.*" (emphasis added).

19       The disagreement among authorities as to whether the term "street" can reasonably be interpreted to include "sidewalk" further supports the Court's conclusion that the Ordinance, in its

20    current version, may chill permissible speech in light of the confusion that it generates.

21       Of course, the fact that the City defines the term "street" to include a certain parking area or lot (but not all) further blurs the meaning of the term "street" and enforcement of this poorly

22    written Ordinance is a recipe for disaster! *See* Glendale Municipal Code § 9.17.020 ("'Street' means a way or place of whatever nature, publicly maintained and open to the use of the public

23    for purpose of vehicular travel. For the purposes of this chapter, street includes highway and *any parking area or lot owned or operated by city or the Glendale Redevelopment Agency.*").

24

25       [5] To illustrate how the vagueness of the Ordinance may cause confusion and misunderstanding, the Court turns to the advertisement for the Center. Order at 22-23. The

26    advertisement has in large, bold letters the word "Warning!" followed by language that states "The City of Glendale Has a law restricting solicitation for work. Illegal behavior includes: Soliciting

27    work from portions of the public right-of-way." The term "public right-of-way" is extremely broad and confusing. It is not at all clear from the advertisement that, under the Ordinance, day laborers

28    may continue to convey their availability for work verbally by standing on sidewalks.

1    In its Motion for Summary Judgment, Defendant posits that statutes should be "interpreted

2  to avoid constitutional difficulties." Def.'s Mot. for Summ. J. at 14 (citing Frisby v. Schultz, 487

3  U.S. 474, 483 (1988)); see also, Southlake Prop. Ass'n v. City of Morrow, 112 F.3d 1114, 1119

4  (11th Cir. 1997) (in evaluating facial challenge to the ordinance, courts must construe the

5  ambiguity, if possible, in a manner which avoids any constitutional problems). Based on these

6  authorities, Defendant asserts that the Ordinance should be construed to exclude sidewalks from

7  the areas where solicitation is prohibited. Such a construction, Defendant claims, is consistent

8  with the intent of the drafters as evidenced by the Declaration of Deputy City Attorney Paul Early

9  and by the face of the amended Ordinance which omits "sidewalks." Def.'s Mot. for Summ. J. at

10  15. Further, Defendant submits that an acknowledgment by this Court that sidewalks are

11  excluded from the scope of the Ordinance would cure any narrow tailoring problems and would

12  be the equivalent of a specific exemption in the Ordinance itself. Id. at 16.

13    In the Court's view, no narrowing interpretation could save the Ordinance. In addition to

14  the Court's extensive explanation in the Order re: Preliminary Injunction as to why the subject

15  Ordinance is vague, the Court further makes the following observations. Although Defendant

16  concedes that day laborers may solicit from the sidewalks, the fact that such exception is not

17  clearly expressed in the Ordinance will likely chill permissible solicitation. The Ordinance includes

18  "parkways" and "curbs" within its expressed prohibitions, yet these areas abut the sidewalk and

19  are often confused by ordinary citizens as part of the sidewalk. Moreover, the Ordinance includes

20  "streets" within its expressed prohibition, yet that term is expansively defined elsewhere in the

21  Glendale Municipal Code as including "sidewalks." See Glendale Municipal Code § 12.36.020

22  (providing that "street" means "all that area dedicated to public use for public street purposes and

23  shall include, but not be limited to, roadways, parkways, alleys and sidewalks").

24    In addition, the Ordinance is not narrowly-tailored. The City includes "curbs" within its

25  expressed prohibitions on the ground that it is unsafe to stand on the curb. Def.'s Mot. for Summ.

26  J. at 16. Yet, at present, the City has no ban on standing on the curb. As Plaintiffs note, jugglers,

27  acrobats, pet walkers, and children of any age are free to stand on Glendale's curb just so long

28  as they do not solicit "by use of the spoken word, bodily act or gesture." Pls.' Opp'n to Def.'s Mot.

1   for Summ. J. at 8.  There is simply no "reasonable fit" between a concern about people standing

2   on curbs and a ban on solicitation speech alone.  Therefore, the Court concludes that the

3   Ordinance is not narrowly-tailored.

4       B.    **The Ordinance Does Not Leave Open Ample Alternative Channels for**
            **Communication of the Information.**

5

6       It is well-established that "the burden of proving alternative avenues of communication rests

7   on" the government.  *Seung Chun Lim v. City of Long Beach,* 217 F.3d 1050, 1054 (9th

8   Cir. 2000).

9       In the instant case, the City must at least make a reasonable and good faith showing that

10  its proffered alternative avenues of communication provide a reasonable opportunity for Plaintiffs

11  to convey their messages within the City.  *See Coalition for Humane Immigrant Rights v. Burke,*

12  2000 U.S. Dist. LEXIS 16520 *34 (C.D. Cal. Sept. 13, 2000).  To meet this burden, the City

13  explains that under the Ordinance, solicitation in any form is permitted on City sidewalks.  Def.'s

14  Mot. for Summ. J. at 18.

15      Solicitors can verbally announce their availability for work from the sidewalk; they can hold

16  up signs advertising their availability or, as some workers do, they can utilize hand gestures with

17  passing drivers.  *Id.*  Alternatively, day laborers can announce their availability for work at the

18  Temporary Skilled Worker Center.  *Id.*  At the Center, laborers have 75% likelihood of obtaining

19  work.  *Id.*  Moreover, they are more likely to receive a fair and competitive wage.  *Id.*  These

20  arguments have been considered, and ultimately, rejected, by this Court in Plaintiffs' Motion for

21  Preliminary Injunction.  *See* Order at 23.  Defendant's briefing on its Motion for Summary

22  Judgment does not offer any new argument in order for the Ordinance to survive constitutional

23  muster.

24      As explained by the Court in its previous Order, the Court cannot rely upon the availability

25  of the sidewalks as alternative avenues of communication because:  (1) the Ordinance does not

26  explicitly provide that solicitation may occur on a sidewalk; (2) the Ordinance is vague and the

27  boundaries of permissible solicitation, with respect to sidewalk and curb, are unclear;  and (3) the

28  Ordinance prohibits solicitation from the street, which it defines as a place for vehicular travel, and

1 || may be misinterpreted since the common usage of the term "street" includes sidewalks. *Id.* at 24.

2 || Further, the Court cannot conclude that the second alternative avenue that Defendant

3 || asserts – the Center – will continue to be available. The availability of the Center as an avenue

4 || for communication is not mentioned in the Ordinance.

5 || Defendant now clarifies that the fate of the Center is not contingent upon the funding and

6 || management decisions of the Catholic Charities, a private organization. Def.'s Mot. for Summ.

7 || J. at 18. Defendant explains that the Catholic Charities is merely the non-profit organization

8 || selected to operate the Center. *Id.* This selection process is repeated annually, and the Catholic

9 || Charities could be replaced by another organization through that process. *Id.* The City leases

10 || the land and owns the improvements on the land which constitutes the Center. *Id.* The City

11 || states that it has invested and continues to invest in the success of the Center by funding

12 || advertisements and improvements for the Center. *Id.*

13 || Defendant misses the point. The fact that the City leases the land and owns the

14 || improvements on the land, including the Center, does nothing to advance its position. The

15 || continued availability of the Center as an alternative channel of communication still remains in the

16 || unsteady hands of the City. Because the availability of the Center as an avenue for

17 || communication is not mentioned in the Ordinance, there is no guarantee of sufficient funding to

18 || permit the Center to operate free of charge.

19 || Further, the Court cannot rely upon the availability of the sidewalks as alternative avenues

20 || of communication, because the Ordinance does not expressly provide for this exception and the

21 || language of § 9.17.030 is likely to chill permissible speech. Based on the foregoing, the Court

22 || finds that the City's asserted alternative avenues are insufficient for the Ordinance to pass

23 || constitutional muster.

24 || III. CONCLUSION

25 || Having duly considered the issues, the Court concludes that Plaintiffs have demonstrated

26 || that, they are entitled to judgment as a matter of law on their claim that the § 9.17.030 of the

27 || Ordinance violates the First and Fourteenth Amendments to the United States Constitution.

28 ||

1  The Court PERMANENTLY ENJOINS Defendant City of Glendale, as well as its officers,

2  agents, servants, employees, and attorneys and those persons in active concert or participation

3  with them from enforcing § 9.17.030 of the Glendale Municipal Code or from undertaking other

4  acts to discourage the speech § 9.17.030 unlawfully prohibits.

5  Plaintiffs shall recover from Defendant, under 42 U.S.C. § 1988, all of Plaintiffs' reasonable

6  attorney fees, costs, and expenses of this litigation.[6]

7  Counsel for the parties are ordered to meet and confer and make a good faith effort to

8  resolve the fee award.

9  Dated this _13_ day of May, 2005.

10

                                S J OT

11                              S. JAMES OTERO
                    UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23  [6] Plaintiffs seek to recover from Defendant reasonable attorney fees, costs, and expenses of
this litigation pursuant to 42 U.S.C. § 1988. Subdivision (b) of section 1988 provides in pertinent

24  part that "the court, in its discretion, may allow the prevailing party, other than the United States,
a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The purpose of § 1988 is

25  to ensure "effective access to the judicial process" for persons with civil rights grievances.
*Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (citing H. R. Rep. No. 94-1558, p. 1 (1976)).

26  Accordingly, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special
circumstances would render such an award unjust.'" *Id.* (citations omitted).

27  Because there exists no "special circumstances that would render such an award unjust,"
the Court exercises its discretion to allow Plaintiffs' recovery of attorney fees and costs in this

28  action.